**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **DEBRA A. HEIMBERGER,** | : | |
| | : | **Case No. 2:12-CV-01064** |
| **Plaintiff,** | : | |
| | : | **JUDGE ALGENON L. MARBLEY** |
| **v.** | : | |
| | : | **Magistrate Judge Deavers** |
| **PENNY PRITZKER,** *et al.*, | : | |
| | : | |
| **Defendants.** | : | |

**OPINION & ORDER**

**I. INTRODUCTION**

This matter is before the Court on Defendants Penny Pritzker,[1] Secretary of the United States Department of Commerce, Census Bureau; United States of America, Department of Commerce; and Rick Essex's (collectively "Defendants") Motion to Dismiss pro se Plaintiff Debra Heimberger's Second Amended Complaint in its entirety (Doc. 46). Defendants argue that the Court lacks subject matter jurisdiction to hear Plaintiff's Federal Tort Claims Act ("FTCA") claims, and that Plaintiff has failed to state a claim on which relief may be granted under either Ohio tort law or Title VII sexual harassment or retaliation. Plaintiff opposes, and further moves partially to strike Defendant's Motion to Dismiss (Doc. 49) and to disqualify the Department of Justice from representing Defendant Essex (Doc. 57).

For the reasons stated herein, Defendants' Motion to Dismiss is **GRANTED IN PART AND DENIED IN PART**. Plaintiff's Motion to Strike is **DENIED**, and Plaintiff's Motion to Disqualify is **DENIED**.

---

[1] When Plaintiff filed this action, Rebecca Blank was the Acting Secretary of the Department of Commerce. (*See* Doc. 2). Since Penny Pritzker assumed the role in June 2013, she was automatically substituted as a Defendant, under Fed. R. Civ. P. 25(d).

## II. PROCEDURAL POSTURE

Plaintiff commenced this action on November 19, 2012.  (Doc. 2).  On January 14, 2013, Plaintiff filed her First Amended Complaint (Doc. 11).  In response, on February 11, Defendants filed their first Motion to Dismiss, for lack of subject-matter jurisdiction and for failure to state a claim.  (Doc. 20).  In addition, the United States Attorney, acting pursuant to 28 U.S.C. § 2679(d), certified that Defendant Essex was acting within the scope of his employment at the time of the incidents alleged by Plaintiff; accordingly, the United States was substituted as the defendant with regard to Plaintiff's claims against Defendant Essex individually, thereby converting those claims into claims under the FTCA.  (Doc. 25; Doc. 25-1).  On March 8, the United States also filed a Motion to Dismiss.  (Doc. 26).

On June 13, 2013, the Magistrate Judge granted Plaintiff's Motion for Leave to File her Second Amended Complaint (Doc. 34), which added additional allegations against Defendant Essex.  The Magistrate Judge denied Defendants' Motions to Dismiss as moot, with leave to refile.  (Doc. 41).  The Magistrate Judge also invited the United States Attorney to re-evaluate whether certification under 28 U.S.C. § 2679(d) was still appropriate in light of the Second Amended Complaint.  (*Id.* at 4).

Plaintiff's Second Amended Complaint was filed June 13, 2013 (Doc. 42), and Defendants' filed the Motion to Dismiss *sub judice* on July 12 (Doc. 46).  Plaintiff opposed (Doc. 50), and also filed her Motion to Strike (Doc. 49).  On September 24, Plaintiff filed her Motion to Disqualify the Department of Justice from representing Defendant Essex (Doc. 57).

All motions have been fully briefed, and are ripe for review.

## III. STATEMENT OF FACTS

Plaintiff brings her claims for sexual harassment and sex discrimination under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.* ("Title VII"), the Federal Tort Claims Act, 28

2

U.S.c. § 2671 *et seq.* ("FTCA"), and Ohio tort law (*Second Amended Complaint*, Doc. 42), arising out of her employment at the United States Department of Commerce, Bureau of the Census, during the 2010 election season.

Plaintiff was hired by the Census Bureau on April 27, 2010, to work as an Enumerator. Plaintiff alleges that, during the course of her employment, her supervisor, Defendant Rick Essex, sexually harassed her while she worked for him, ultimately resulting in her termination when she refused his advances. Plaintiff alleges, specifically, that she met Essex for the first time on July 2, 2010, when Essex became "crew leader" for Crew Number 206 in the Columbus area. (*Second Amended Complaint*, Doc. 42, ¶ 13). Essex began encouraging and, eventually, pressuring Plaintiff to become his "Crew Leader Assistant." (*Id.*, ¶¶ 16-19). Plaintiff eventually agreed, and became a Crew Leader Assistant on July 7, 2010. (*Id.*, ¶¶ 20-21).[2]

Throughout this time, according to Plaintiff, Essex repeatedly asked Plaintiff to go on dates with him. (*Id.*, ¶ 22). When she refused, Essex responded that she owed him a date, in exchange for her being promoted to Crew Leader Assistant. (*Id.*, ¶¶ 22, 40). Plaintiff further alleges a number of comments or actions by Essex: Essex allegedly told Plaintiff that she is "well put together" and "easy on the eyes (*id.*, ¶¶ 28, 82); called another co-worker "kitty cat" (*id.*, ¶ 31); told crew members that his name had "sex" in it ¶ (*id.*, ¶ 42); asked Plaintiff for her home address (*id.*, ¶ 35); offered to visit her at her deceased grandmother's home in Fostoria, Ohio, and do carpentry work there free of charge (*id.*, ¶¶ 37-38, 83); asked if she wanted to go with him on a boat ride in Michigan (*id.*, ¶ 37); suggested Plaintiff wear shorts to work (*id.*, ¶ 43); deviated from Census Bureau business to drive, with Plaintiff, to Best Buy to pick up his

---

[2] Defendants argue that Plaintiff was elevated to the position of Crew Leader Assistant effective June 21, 2010, almost two weeks before Plaintiff allegedly met Essex. (*Defs.' Mot. To Dismiss*, Doc. 46 at 4) (citing *Notice of Personnel Action*, Doc. 46-1 at 10).

personal computer (*id.*, ¶ 44); took Plaintiff's bruised hand and massaged it, telling her he could "make it better" (*id.*, ¶ 46); put his arm and hand in Plaintiff's way, causing her to touch him (*id.*, ¶ 45); talked about his daughter and his personal interests, drove Plaintiff past his childhood home, and took her to Dairy Queen (*id.*, ¶ 47); bought a fruit smoothie and offered to share it with Plaintiff, showed her photos from a cruise he had taken, told her all he needed to pack for a cruise was a speedo, and asked her to attend a music fest after a crew meeting (*id.*, ¶¶ 48-51); gave her a book and photograph from his cruise and sent her his favorite poem (*id.*, ¶¶ 54-55); asked her out on dates and for a commitment to a relationship (*id.*, ¶¶ 58, 81, 85); showed up uninvited at restaurants where Plaintiff was grading papers (*id.*, ¶ 86), and made calls to her on July 19, 2010 (*id.*, ¶ 88), leading Plaintiff to experience distress and feel as if she was being stalked (*id.*, ¶ 86).

Plaintiff alleges throughout this period, she resisted all of Essex's advances.  (*Id.*, ¶ 63). She states that when she informed Essex that she did not feel comfortable being alone with him, he insisted that he was her supervisor and she would do as he told her.  (*Id.*, ¶¶ 61-62).  On July 12, 2010, when Plaintiff indicated that she would not be able to attend a Census meeting because of her other job, Essex indicated that he would consider her insubordinate if she did not attend; when she did attend, she was the only crew member present with Essex.  (*Id.*, ¶ 65).  Essex asked Plaintiff to teach him interpersonal skills in exchange for him teaching her project management skills; Plaintiff declined.  (*Id.*, ¶ 65).

On July 13, 2010, Essex wrote up Plaintiff for three instances of insubordination.  (*Id.*, ¶ 66).  On July 14, Essex, without explanation, demanded that Plaintiff turn over her badge and bag, meaning Plaintiff could no longer do work for the Census Bureau.  (*Id.*, ¶ 67).  Later that day, Plaintiff reported the alleged sexual harassment of Essex to his supervisor, Kevin Mora.

(*Id.*, ¶¶ 68, 105-06).  Plaintiff was ultimately terminated as a Census employee on July 18, 2010. (*Id.*, ¶¶ 70, 107).  Plaintiff alleges that she was replaced as Crew Leader Assistant by Mark Boyd, a male employee, and furthermore that no male employees who complained about the hostile work environment created by Essex were terminated.  (*Id.*, ¶¶ 75-77).  Plaintiff also asserts that Defendants refused to investigate Plaintiff's allegations against Essex.  (*Id.*, ¶ 108).

Plaintiff further alleges that, in addition to be terminated "in retaliation for opposing the sexual harassment of Defendant Essex" (*id.*, ¶ 71) she "was terminated . . . for reporting fraud and waste to local management" (*id.*, ¶ 76).  Her Second Amended Complaint offers scant details:  Plaintiff notes that her administrative complaint asserted that her termination "was motivated by illegal discrimination against her based on sexual harassment, sex discrimination and retaliation for opposing unlawful actions."  (*Id.*, ¶ 10).  She does not explain further.

Plaintiff submitted her administrative claim pursuant to the Federal Tort Claims Act with the Department of Commerce on July 10, 2012.  (*Id.*, ¶ 11; Doc. 50-2).  Her complaint contains greater detail regarding the falsifying of documents and data that Plaintiff alleges took place during her time working for the Census Bureau.  (*See* Doc. 50-2 at 17).  Plaintiff claims in the complaint that she was retaliated against for reporting this fraud, that the Census Bureau failed to investigate her claims of sexual harassment, and that the Census Bureau negligently trained and retained Defendant Essex.  (*Id.* at 17-19).  Plaintiff alleges that the Department of Commerce never responded to her FTCA claims.  (*Aff. of Debra Heimberger*, Doc. 50-3, ¶ 3; *Decl. of Megan Rose*, Doc. 46-2, ¶¶ 2-3).  Plaintiff commenced this lawsuit on November 19, 2012. (Doc. 2).  Plaintiff seeks $300,000 in compensatory damages under Title VII and $725,000 under the FTCA, as well as the maximum amount of punitive damages allowable, back pay, and the

removal of "any and all derogatory information" from her personnel file indicating that she was disciplined or terminated for insubordination.  (Doc. 42 at 11).

## IV. STANDARD OF REVIEW

### A.  Subject Matter Jurisdiction

The Court must first decide whether it has subject matter jurisdiction.  *City of Heath, Ohio v. Ashland Oil, Inc.,* 834 F. Supp. 971, 975 (S.D. Ohio 1993) (citing *Moir v. Greater Cleveland Reg'l Transit Auth.,* 895 F.2d 266, 269 (6th Cir. 1990)); Fed. R. Civ. P. 12(b)(1). Plaintiff bears the burden of proving jurisdiction when subject matter jurisdiction is challenged under 12(b)(1).  *Rogers v. Stratton Indus.,* 798 F.2d 913, 915 (6th Cir. 1986).

In reviewing a factual attack on subject matter jurisdiction, no "presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996).  The court may allow "affidavits, documents, and even a limited evidentiary hearing to resolve disputed jurisdictional facts." *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990).

The Court must liberally construe Plaintiff's *pro se* pleadings.  *Pro se* complaints are held to "less stringent standards than formal pleadings drafted by lawyers." *West v. Adecco Employment Agency,* 124 F. App'x. 991, 992 (6th Cir. 2005) (quoting *Haines v. Kerner,* 404 U.S. 519, 520 (1972)).  The Supreme Court, however, has "never suggested procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel." *Id.* (quoting *McNeil v. United States,* 508 U.S. 106, 113 (1993)).  A *pro se* litigant "must conduct enough investigation to draft pleadings that meet the requirements of the federal rules." *Id.* (quoting *Burnett v. Grattan,* 468 U.S. 42, 50 (1984)).

**B.  Failure to State a Claim**

Federal Rule of Civil Procedure 12(b)(6) allows for a case to be dismissed for "failure to state a claim upon which relief can be granted."  Such a motion "is a test of the plaintiff's cause of action as stated in the complaint, not a challenge to the plaintiff's factual allegations."  *Golden v. City of Columbus*, 404 F.3d 950, 958-59 (6th Cir. 2005).  Thus, the Court must construe the complaint in the light most favorable to the non-moving party.  *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008).  The Court is not required, however, to accept as true mere legal conclusions unsupported by factual allegations.  *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009).  Although liberal, Rule 12(b)(6) requires more than bare assertions of legal conclusions.  *Allard v. Weitzman*, 991 F.2d 1236, 1240 (6th Cir. 1993) (citation omitted).  Generally, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  But the complaint must "'give the defendant fair notice of what the claim is, and the grounds upon which it rests.'"  *Nader v. Blackwell*, 545 F.3d 459, 470 (6th Cir. 2008) (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)).  In short, a complaint's factual allegations "must be enough to raise a right to relief above the speculative level."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  It must contain "enough facts to state a claim to relief that is plausible on its face."  *Id.* at 570.

**V. LAW AND ANALYSIS**

**A.  Federal Tort Claims Act and Substitution of the United States for Defendant Essex**

The FTCA provides that the United States may be liable for tort claims under state law caused by its employees while acting within the scope of their employment, to the same extent as a private individual under like circumstances.  28 U.S.C. § 2674; 28 U.S.C. § 1346(b)(1).  This remedy is "exclusive of any other civil action or proceeding for money damages by reason of the same subject matter against the employee whose act or omission gave rise to the claim."  28

7

U.S.C. § 2679(b)(1). Any other civil action "arising out of, or relating to the same subject matter against the employee . . . is precluded." *Id.*

In addition, under 28 U.S.C. § 2679(d)(1), upon "certification of the Attorney General," or, under 28 C.F.R. § 15.4, the appropriate United States Attorney, that the defendant employee "was acting within the scope of his office or employment" at the time of the incident out of which the claim arose,

> any civil action or proceeding commenced upon such claim in a United States district court shall be deemed an action against the United States under the provisions of this title and all references thereto, and the United States shall be substituted as the party defendant.

28 U.S.C. § 2679(d)(2).

On March 8, 2013, the United States gave notice to this Court of its certification pursuant to § 2679(d)(1), and substituted itself as Defendant for Plaintiff's claim for intentional infliction of emotional distress ("IIED"), in place of Defendant Essex. (Doc. 25 at 1).

In light of Plaintiff's Second Amended Complaint, however, the Magistrate Judge ordered the United States to "re-evaluate" whether Essex was acting within the scope of his employment. (Doc. 41 at 4). In its Motion to Dismiss, therefore, the United States certified that Essex "was acting within the course and scope of his employment at all times relevant to [Plaintiff's] claims, with the exception of conduct alleged in paragraphs 81, 86, and 88." (Doc. 46 at 8).[3] But because the conduct described in those paragraphs "does not give rise to a separate cause of action," it concluded that "substitution of the United States for Defendant Essex is

---

[3] These paragraphs allege that Essex "asked Plaintiff out for dates and/to [sic] commit to a relationship with him over one hundred times" (Doc. 42, ¶ 81); that Essex "showed up at restaurants where Plaintiff graded papers" on days and times when Plaintiff was not scheduled to work (*id.*, ¶ 86); and that Essex "continued to make unwanted calls to Plaintiff after he was terminated" by the Census Bureau, and after Plaintiff was terminated by the Census Bureau, including "[o]n or about July 19, 2010" (*id.*, ¶ 88).

proper." (*Id.*).  Therefore, the United States insists that the state-law tort claims against Essex "must be dismissed or converted into an FTCA claim against the United States." (*Id.*).

Plaintiff does not directly challenge the substitution of the United States with respect to the state-law claims, and the consequent conversion of such claims into claims under the FTCA. Plaintiff instead directs her objection to the *representation* of Essex by Department of Justice lawyers.  She moves to strike "subsection B," on pages 13 and 14 of Defendants' Motion to Dismiss, on the grounds that because the United States acknowledges that some portions of Essex's conduct was outside the scope of his employment, it is improper for it to be substituted for him as a defendant.  (Doc. 49 at 1).  Plaintiff argues that the United States' defense of Essex is "grossly unfair and contrary to law," and also "a waste of scarce government resources." (Doc. 49-1 at 2).  Plaintiff further argues that, under Ohio law, her allegations in paragraphs 81, 86, and 88 alone state plausible claims of IIED against Essex.  (*Id.* at 2-3).

Roughly six weeks after filing her Motion to Strike, Plaintiff also filed the pending Motion to Disqualify, seeking an Order pursuant to 28 U.S.C. § 517 disqualifying the United States, and/or the Department of Commerce, from representing Essex with respect to the state-law tort claim.  (Doc. 57 at 1).  Plaintiff takes issue with the United States' claim that it has, in her words, "unbridled discretion" to represent Essex for private actions.  (Doc. 58 at 2).  Plaintiff further argues that the United States ignores the requirements of 28 C.F.R. § 50.15, that a federal employee may be provided representation only when he acted within the scope of his duties *and* where the Attorney General or his designee "determines that providing representation would otherwise be in the interest of the United States."  *See also* 28 U.S.C. § 517.

The United States responds that Plaintiff misunderstands the limits on its ability to represent federal employees.  Once it determined that Essex's alleged conduct "reasonably

appeared to have been performed within the scope of his employment," the United States argues, the matter is decided. (Doc. 54 at 1). This determination "is for the government to decide," and is "an unreviewable agency decision." (*Id.* at 2) (quoting *Payne v. Elie*, No. CIV 11-486, 2012 WL 748285, at *2 (D. Ariz. Mar. 7, 2012)). The United States further argues that, even if its decision were reviewable, it has articulated sufficient grounds. (Doc. 60 at 2). It insists that, in reality, only one allegation against Essex was outside the scope of his duties – that is, the phone calls made after he was no longer employed by the Census Bureau. The United States compares this case to *Bontkowski v. Smith*, 305 F.3d 757 (7th Cir. 2002), where the court found that the decision to represent an FBI agent accused of conspiring to steal from, and maliciously prosecute, the plaintiff was proper. The court in that case reasoned that "it would be absurd to require law enforcement officers to defendant at their own expense against likely groundless spite suits by people whom they have arrested or investigated." *Id.* at 760.

The Parties have taken a blunt instrument to a delicate area of law. To the extent that Plaintiff challenges the ability of the United States Attorney's Office ("USAO") to represent Defendant Essex, under 28 U.S.C. § 517 and 28 C.F.R. § 50.15, it is well-settled that "Plaintiffs' subjective belief as to whether Defendants' conduct was within the scope of their employment is irrelevant[,] because the language of the regulation makes clear it is for the Government to determine whether federal employees should receive representation." *Rodriguez v. Shulman*, 843 F. Supp. 2d 96, 100 (D.D.C. 2012). Thus, regardless of Plaintiff's subjective belief, or whether the Court has any doubts as to whether Essex's alleged pursuit of Plaintiff really was performed "within the course and scope of his employment," the United States may, at its discretion, provide representation for Defendant Essex. *See Hall v. Clinton*, 143 F. Supp. 2d 1, 4 (D.D.C. 2001) *aff'd*, 285 F.3d 74 (D.C. Cir. 2002). Section 517 and 28 C.F.R. § 50.15 "give[] no

guidance to the Courts regarding what is or is not in the interests of the United States," and so are "drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Payne v. Elie*, CIV 11-486, 2012 WL 748285, at *1 (D. Ariz. Mar. 7, 2012) (quoting *Turner v. Schultz*, 187 F. Supp. 2d 1288, 1294 (D.Colo. 2002)). Accordingly, Plaintiff's Motion to Strike (Doc. 49) and Motion to Disqualify (Doc. 57) are **DENIED**.

With regard to the United States' *substitution* for Essex under 28 U.S.C. § 2679(d)(1), however, it is beyond question that this Court may review the Attorney General's, or his designee's, certification. As the Supreme Court has made clear, "the Attorney General's certification that a federal employee was acting within the scope of his employment . . . does not conclusively establish as correct the substitution of the United States as defendant in place of the employee." *Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 434 (1995).

A plaintiff challenging certification "must present evidence from which a District Court reasonably could find that the original defendant-employee acted outside the scope of her employment." *Allstate Ins. Co. v. Quick*, 107 F. Supp. 2d 900, 904-05 (S.D. Ohio 1999). Certification itself serves as *prima facie* evidence that an employee acted within the scope of employment, and therefore a plaintiff cannot defeat substitution "merely be relying upon the factual allegations of [her] complaint." *Id.* at 905 (citing *Rutkofske v. Norman*, 114 F.3d 1188, 1997 WL 299382 (6th Cir. June 4, 1997)). Rather, she must present evidence that "raises a genuine issue of material fact on the scope-of-employment issue." *Id.* (noting also that an evidentiary hearing on the scope-of-employment issue is necessary only when the record contains conflicting evidence with respect to a material fact).

Whether an employee was acting within the scope of his employment "is a question of law, not fact, made in accordance with the law of the state where the conduct occurred." *Dolan*

*v. United States*, 514 F.3d 587, 593 (6th Cir. 2008) (quotation omitted).[4]  In this case, however,

Plaintiff has offered no evidence, beyond her Second Amended Complaint, her affidavit in

support thereof (Doc. 50-3), and her administrative complaint (Doc. 50-2), to show that Essex

was acting outside the scope of his employment.  Instead, she relies entirely on the United States'

own admission that Essex was acting outside the scope of his employment with respect to

paragraph 88, and possibly with respect to paragraphs 81 and 86, of the Second Amended

Complaint.  (*See* Doc. 46 at 8).  These allegations state, in sum, that Essex made unwanted calls

to Plaintiff after he no longer was employed by the Census Bureau (Doc. 42, ¶ 88), and that he

asked her out repeatedly on dates and appeared at restaurants where Plaintiff was grading papers

on her days off (*id.*, ¶¶ 81, 86).  The United States reasons that "because the additional conduct

does not give rise to a separate cause of action" (Doc. 46 at 8), and considering the "*de minimis*

nature of the additional claims" (Doc. 53 at 7), substitution under 28 U.S.C. § 2679(d)(2)

remains proper.  (Doc. 46 at 8).

Because Plaintiff has presented no evidence that Essex was acting outside the scope of

his employment, substitution of the United States, and conversation of the claim into one under

the FTCA, is proper with respect to all of Plaintiff's allegations against Essex, except those

alleged in paragraphs 81, 86, and 88.

The Court therefore **ORDERS** that the United States shall be substituted for Defendant

Essex with respect to her allegations of IIED, except with regard to paragraphs 81, 86, and 88 of

her Second Amended Complaint.  The Court further **ORDERS** that this claim is hereby

---

[4] Under Ohio law, an employee acts within the scope of employment if his conduct:  (1) is of the kind which he is
employed to perform; (2) occurs substantially within the authorized limits of time and space; and (3) is actuated, at
least in part, by a purpose to serve the employer.  *Anderson v. Toeppe*, 688 N.E.2d 538, 543 (Ohio App. 1996).  The
key issue is the actions complained of and whether those actions are "so divergent that [their] very character severs
the relationship of employer and employee." *Osborne v. Lyles*, 587 N.E.2d 825, 829 (Ohio 1992).

converted into a claim under the FTCA.  Lastly, the Court **ORDERS** that, to the extent paragraphs 81, 86, and 88 of the Second Amended Complaint state an independent claim for IIED under Ohio law, this claim shall proceed against Defendant Essex.

As explained more fully below, *see* Part V.B., *infra*, the Court concludes that Plaintiff's FTCA claims are preempted by Title VII, and the Court therefore lacks subject matter jurisdiction to entertain them.  In addition, in Part V.C., *infra*, the Court finds that paragraphs 81, 86, and 88 fail to state a claim for relief for IIED under Ohio law.  Accordingly, Plaintiff's claims for IIED, both against the United States under the FTCA, and against Defendant Essex, are hereby **DISMISSED**.

### B.  Subject Matter Jurisdiction for FTCA Claims

The United States argues that Plaintiff's FTCA claims are preempted by Title VII.  The United States asserts that "[t]here is no question that" Title VII is the exclusive remedy for a federal employee's allegations of discrimination in the workplace.  (Doc. 46 at 8).  It explains that when amending the Civil Rights Act in 1972, Congress made it the exclusive remedy for federal employment discrimination claims, preempting any other statutory scheme.  (Id.at 8-9). The United States acknowledges, however, that Title VII preempts other claims only "when a complainant . . . relies on the same facts to establish a Title VII claim and a non-title VII claim," such that the non-Title VII claim is "not sufficiently distinct to avoid preemption."  (Id. at 9) (quoting *Roland v. Potter*, 366 F. Supp. 2d 1233, 1235 (S.D. Ga. 2005)).  But because Plaintiff's Title VII and FTCA claims are based on the same facts and circumstances, the United States concludes, her FTCA claims are preempted and must be dismissed.  (Doc. 46 at 9).

Plaintiff counters that the Sixth Circuit Court of Appeals has not conclusively ruled on whether IIED-based claims under the FTCA are preempted by Title VII.  (Doc. 50 at 4).

Plaintiff instead argues both that her claims present the sort of "highly personal wrongs" that other courts have found not to be preempted, and also that she alleges operative facts beyond mere sexual harassment, including for failure to supervise.  (*Id.* at 5-6).

The Supreme Court has explained that the legislative history of the 1972 Amendments to the Civil Rights Act makes clear Congress' intent to create "an exclusive, pre-emptive administrative and judicial scheme for the redress of federal employment discrimination." *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 829 (1976).  The Court reasoned that the intricate, detailed, and "precisely drawn" statutory scheme for preventing federal workplace discrimination preempted the more general remedies of other federal statutes.  *Id.* at 834. Though applied in *Brown* in the context of racial discrimination, this rationale has been extended to cases of sex discrimination under Title VII as well.  *See, e.g.*, *Briggs v. Potter*, 463 F.3d 507, 517 (6th Cir. 2006) ("Federal employees must rely upon Title VII and other federal antidiscrimination statutes like the ADEA that apply to the federal government as the exclusive remedy for combating illegal job discrimination.").

Despite *Brown*'s expansive pronouncement, however, not all claims based on workplace conduct are subsumed by Title VII.  For example, a claim for assault and battery under state common law, even when brought together with a claim of employment discrimination, is "not a cause of action for employment discrimination within the scope of . . . Title VII" and therefore not preempted.  *Quillen v. United States Postal Serv.*, 564 F. Supp. 314, 321 (E.D. Mich. 1983). Claims brought under other civil rights statutes, on the other hand, have been regularly held preempted and dismissed.  *See, e.g.*, *Davis v. Runyon*, 142 F.3d 433 (6th Cir. Feb. 23, 1998) (holding that Title VII preempts claims under 42 U.S.C. § 1981 and under Ohio discrimination

statute, O.R.C. § 4112.02); *Day v. Wayne County Bd. of Auditors*, 749 F.2d 1199, 1204 (6th Cir. 1984) (same).

As this Court has recognized, "[a] claim for intentional infliction of emotional distress presents a more difficult question." *Wallace v. Henderson*, 138 F. Supp. 2d 980, 984 (S.D. Ohio 2000) (Rice, J.). Various courts of appeals have reasoned differently regarding the reach of Title VII's preclusive effect. *Compare Brock v. United States*, 64 F.3d 1421, 1423 (9th Cir. 1995) ("Title VII is not the exclusive remedy for federal employees who suffer 'highly personal' wrongs, such as defamation, harassing phone calls, and physical abuse . . . When the harms suffered involve something more than discrimination, the victim can bring a separate claim.") *with Pfau v. Reed*, 125 F.3d 927, 932-34 (5th Cir. 1997) (state law intentional infliction of emotional distress claims against federal employer preempted by Title VII).

In *Wallace*, this Court reasoned that the Supreme Court did not "intend[] to preclude plaintiffs from bringing claims which, although based on the same facts and circumstances as the Title VII claim, are based on a violation of a distinct and independent right." 138 F. Supp. 2d at 986. This Court concluded, therefore, that "to the extent that Plaintiff's intentional infliction of emotional distress claim is the result of retaliation in [the] workplace," the claim was preempted by Title VII; but "to the extent that [the] intentional infliction of emotional distress claim seeks redress for a 'highly personal injury,' beyond discrimination or retaliation, which was caused by [Defendant's] behavior, [the] claim remains." *Id.* (quoting *Brunetti v. Rubin*, 999 F. Supp. 1408, 1411 (D. Col. 1998)). This Court reiterated its conclusion nine years later, in *Roe v. Gates*, 3:03-CV-192, 2009 WL 3063393, at *14 (S.D. Ohio Sept. 21, 2009) (but dismissing IIED claim as precluded by Title VII, since the plaintiff's complaint "implie[d] that she [wa]s bringing her

intentional infliction of emotional distress claim as a result of race discrimination or retaliation, rather than basing it on a violation of a distinct and independent right.").

In this case, Plaintiff has not articulated the sort of "highly personal wrong" that gives rise to a cause of action separate and distinct from her claim under Title VII.  Plaintiff's allegations are not of the same order of magnitude as those in *Wallace*, where, the Court recounted, "[the defendants] subjected Plaintiff to constant harassment, including threats to his life, threats to his employment, threats of serious injury to him, harassing language and gestures, and stalking . . . in retaliation for his cooperation in [an internal] investigation[]," and where his "repeated complain[ts]" to his supervisors were ignored.  138 F. Supp. 2d at 981-82.  In the Ninth Circuit, from which this Court borrowed the "highly personal injury" standard, the Court of Appeals has explained that the exception to Title VII's preclusive effect requires serious "personal violation," such as rape, *Brock*, 64 F.3d 1421; sexual assault, *Arnold v. United States*, 816 F.2d 1306 (9th Cir. 1987); or stalking, defamation, and harassment with phone calls, resulting in the plaintiff suffering a miscarriage, *Otto v. Heckler*, 781 F.2d 754 (9th Cir. 1986).  Merely "highly offensive" conduct, such as "intentional touching and [] sexually suggestive and vulgar remarks," are "typical of the offensive workplace behavior giving rise to an action to remedy a hostile work environment," and are properly considered under Title VII, not a separate cause of action.  *Sommatino v. United States*, 255 F.3d 704, 712 (9th Cir. 2001).[5]

---

[5] Plaintiff also argues that her FTCA claim should survive because her allegations of negligent supervision, based on the Census Bureau's refusal to investigate Plaintiff's allegations of fraud, abuse, and forging of documents, go beyond the allegations of her Title VII claim.  (Doc. 50 at 5-6).  Plaintiff's Second Amended Complaint offers only the barest hints with regard to this claim, however, mentioning this basis for relief only twice.  (*See* Doc. 42, ¶¶ 10, 76).  Moreover, to the extent that Plaintiff has even succeeded in stating a claim under Ohio law, she argues that she was fired "in retaliation for" reporting fraud and waste.  This is precisely the sort of workplace conduct addressed by Title VII, and not of the "highly personal nature" that survives preclusion.  *See Schroder v. Runyon*, 1 F. Supp. 2d 1272, 1279 (D. Kan. 1998) *aff'd*, 161 F.3d 18 (10th Cir. 1998).

Plaintiff's allegations here, while "highly offensive" if proved, do not meet the threshold of a "highly personal wrong" separate and distinct from a sexual harassment or hostile workplace claim.  Accordingly, Plaintiff's claims under the FTCA are preempted by Title VII and are thus **DISMISSED**.[6]

### C.  Failure to State a Claim for IIED under Ohio Law

The United States argues that Plaintiff has failed to state a claim for IIED under Ohio law with regard to the allege conduct by Defendant Essex.  (Doc. 46 at 8, 13-14).  In particular, the United States asserts that the allegations against Essex do not amount to the sort of "extreme and outrageous" as well as "intentional or reckless" conduct required by Ohio law.  The United States insists that because Ohio law requires conduct "so outrageous" so as to be regarded as "atrocious and utterly intolerable in a civilized society," Plaintiff cannot succeed, since she alleges mere unwanted phone calls, persistent requests for dates, and unwelcome appearances at the same restaurants Plaintiff, which do not "go beyond all bounds of decency."  (*Id.* at 14).

Plaintiff does not substantively address this argument in her Response, arguing instead that this portion of Defendants' Motion should be struck on the grounds that the United States' representation of Essex is improper.  (Doc. 50 at 9).  In her Motion to Strike, however, Plaintiff maintains that she has succeeded in alleging "more than a reasonable person [could] bear," such that the average person would experience emotion distress.  (Doc. 49-1 at 4) (citing *Davis v. Billow Co. Falls Chapel*, 610 N.E.2d 1024, 1027 (Ohio App. 1991)).

Under Ohio law, a claim for IIED requires a plaintiff to show that:  (1) the defendant either intended to cause emotional distress or knew or should have known that the actions taken

---

[6] Because the Court concludes that Plaintiff's FTCA claim is preempted by Title VII, the Court declines to address the United States' argument that Plaintiff failed to exhaust administrative remedies as required by 28 U.S.C. § 2675(a).  (*See* Doc. 46 at 10-11).

would result in serious emotional distress; (2) the defendant's conduct was "extreme and outrageous"; (3) the defendant's actions proximately caused psychic injury; and (4) the mental anguish suffered by the plaintiff was serious, and no reasonable person could be expected to endure it. *Ekstrom v. Cuyahoga Cnty. Comty. Coll.*, 779 N.E.2d 1067, 1076 (Ohio App. 2002). The emotional injury must be "both severe and debilitating." *Id.* (citing *Burkes v. Stidham*, 668 N.E.2d 982, 989 (Ohio. App. 1995)).  The injury that is suffered must "surpass upset or hurt feelings, and must be such that a reasonable person, normally constituted, would be unable to cope adequately with the mental distress engendered by the circumstances in the case." *Radcliff v. Steen Elec., Inc.*, 841 N.E.2d 794, 803 (Ohio App. 2005) (quotation omitted).

The requirement that the conduct be "extreme and outrageous" demands that Defendant's actions "[went] beyond all possible bounds of decency and [are] regarded as atrocious and utterly intolerable in a civilized community." *Yeager v. Local Union 20*, 453 N.E.2d 666, 671 (Ohio 1983) (quotation omitted), a*brogated on other grounds by Welling v. Weinfeld*, 866 N.E.2d 1051 (Ohio 2007).  A claim that a defendant treated the plaintiff "harshly, rudely, and unfairly," for example, is not enough to state a claim under Ohio law.  *Rossi v. Alcoa, Inc.*, 129 F. App'x 154, 159 (6th Cir. 2005).  Liability for IIED "does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Yeager*, 453 N.E.2d at 671.

Although workplace sexual harassment can form the basis of a claim for IIED, *see Johnson v. Cox*, No. 96-CA-622, 1997 WL 152636, at *4 (Ohio App. Mar. 28, 1997), Plaintiff has not here succeeded in alleging such a claim against Essex.  Sexual harassment is not "extreme and outrageous" enough to sustain a claim for IIED under Ohio law when, even if distasteful, the alleged comments and actions were not, for example, "severe" or "physically threatening or humiliating." *Harter v. Chillicothe Long-Term Care, Inc.*, No. 11-CA-3277, 2012

18

WL 1997821, at *6, 8 (Ohio App. May 29, 2012).  In the three paragraphs alleged against Essex where he was acting outside the scope of his employment, Plaintiff charges that Essex asked her out on dates "over one hundred times" (Doc. 42, ¶ 81), that he showed up at restaurants where Plaintiff graded papers *(id.*, ¶ 86), and that he made unwanted phone calls even after neither party continued to work for the Census Bureau *(id.*, ¶ 88).  This is not enough.  While Essex's conduct may have been inappropriate, or even threatening, more is required.  The Court cannot say that the alleged actions are so "extreme and outrageous" as to go "beyond all possible bounds of decency," such that the actions may be regarded as "atrocious and utterly intolerable in a civilized community."  *Yeager*, 453 N.E.2d at 671.  Accordingly, Plaintiff's claim for IIED under Ohio law against Defendant Essex must be **DISMISSED**.

### D.  Failure to State a Claim under Title VII

Finally, the United States challenges Plaintiff's allegations of sexual harassment and retaliation under Title VII, on the grounds that she has failed to state a claim on which relief can be granted.  The United States argues that Title VII requires that the workplace be "permeated with discriminatory intimidation, ridicule, and insult," judged both by an objective and subjective standard.  (Doc. 46 at 15).  It points to Plaintiff's failure to allege any request for sexual favors in exchange for her promotion to Crew Leader Assistant.  (*Id.* at 16).  Since "simple teasing, offhand comments and isolated incidents do not amount to" discrimination, the United States concludes that Plaintiff's claim must fail.  (*Id.* at 16-17).  Merely making Plaintiff uncomfortable, it urges, does not rise to the level of actionable sexual harassment.  (*Id.* at 17).

The United States also attacks Plaintiff's claim for retaliation under Title VII.  It reasons that because Plaintiff did not report the alleged harassment until *after* she was asked to hand over her bag and badge, she cannot, as a matter of law, prove retaliation.  (*Id.* at 17-18).  The United

States also disputes that termination for "resisting a sexual hostile work environment" is distinct from the claim Plaintiff has already alleged for sexual harassment. (*Id.* at 18).

Plaintiff responds that she has succeeded, first, in stating a claim for "*quid pro quo* sexual harassment," based on Essex's actions and the fact that Plaintiff suffered an adverse employment action—that is, her termination. (Doc. 50 at 10-11). Plaintiff separately argues that she has stated a claim for "hostile work environment sexual harassment," because of the "severe and pervasive" harassment, which created a "hostile and abusive" workplace. (*Id.* at 13-14). Plaintiff further asserts that she has stated a different claim for "sex discrimination," because only she, and not other male employees, was punished (by termination) for complaining about the hostile work environment created by Defendant Essex. (*Id.* at 14-15). Plaintiff also argues that strict liability applies because she was sexually harassment by "a person in management." (*Id.* at 15). Thus, she concludes that it is irrelevant whether the Census Bureau had notice. (*Id.*).

In addition, Plaintiff insists that she has stated a claim for retaliation under Title VII, because she "resisted the advances" of Essex, and consequently was accused of insubordination and ultimately fired. (*Id.* at 19). Plaintiff also notes that although she was removed from work on July 14, she was not officially terminated until July 18, *after* she aired her complaints of sexual harassment. (*Id.* at 20).

Title VII violations take the form of both "*quid pro quo*" economic benefits, as well as the "creat[ion] [of] a hostile or abusive work environment*." Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65-66 (1986). While the terms *quid pro quo* and hostile work environment "are helpful, perhaps, in making a rough demarcation between cases in which threats are carried out," and those alleging "bothersome attentions or sexual remarks that are sufficiently severe or pervasive to create a hostile work environment," the terms are "of limited utility" beyond this.

*Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 751 (1998). Thus, these demarcations are relevant "where there is a threshold question whether a plaintiff can prove discrimination in violation of Title VII." *Id.* at 753. When a plaintiff "proves that a tangible employment action resulted from a refusal to submit to a supervisor's sexual demands" ("*quid pro quo*"), she establishes a change in "the terms and conditions of employment" that is actionable under Title VII; for "sexual harassment preceding the employment decision" ("hostile work environment"), however, a plaintiff must show that the conduct was "severe and pervasive." *Id.* at 753-75.

Under either appellation, Title VII discrimination can subject an employer to vicarious liability, when the hostile environment is created by "a supervisor with immediate (or successively higher) authority over the employee." *Id.* at 765. If no tangible employment action is taken (i.e. "hostile environment" claims), "a defending employer may raise an affirmative defense to liability or damages, subject to proof by a preponderance of the evidence," if it shows that the employer "exercised reasonable care to prevent and correct" the behavior, and if it shows that the employee "unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Id.* No affirmative defense is available, however, "when the supervisor's harassment culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment." *Id.*

### 1. *Quid Pro Quo Sexual Harassment*

A claim for *quid pro quo* sexual harassment "is anchored in an employer's sexually discriminatory behavior which compels an employee to elect between acceding to sexual demands and forfeiting job benefits, continued employment or promotion, or otherwise suffering tangible job detriments." *Highlander v. K.F.C. Nat'l Mgmt. Co.*, 805 F.2d 644, 648 (6th Cir. 1986). To succeed, Plaintiff must show that: (1) she is a member of a protected class; (2) she

was subjected to unwelcome sexual harassment; (3) the harassment was based on her sex; (4) her refusal to submit to the unwelcome demands resulted in an adverse employment action.  *Sanford v. Main St. Baptist Church Manor, Inc.*, 327 F. App'x 587, 596 (6th Cir. 2009).  There is no question that Plaintiff is a member of a protected class, and that, as alleged, the advances by Defendant Essex were based on her sex.  Accordingly, the Court focuses on factors (2) and (4).

The second element requires a showing of "unwelcome sexual harassment."  To determine whether Essex's actions were "unwelcome," the Court looks to Plaintiff's "words, deeds, and deportment."  *Souther v. Posen Constr., Inc.*, 523 F. App'x 352, 355 (6th Cir. 2013). Defendant's actions need not necessarily be of an overtly sexual nature.  For example, "multiple comments about being attracted to [the plaintiff] and [] two comments that [the coworker] wished he could spend the entire day in [plaintiff's] office" during a single month, combined with the plaintiff's communicating her feelings that the comments were undesirable, can be enough.  *See Moberly v. Midcontinent Commc'n*, 711 F. Supp. 2d 1028, 1038 (D.S.D. 2010).  But a defendant's alleged conduct must "carr[y] with it an express or implied request for sexual favors."  *Thomas v. Henderson*, 44 F. Supp. 2d 915, 926 (E.D. Mich. 1999).

Plaintiff has alleged sufficient conduct to satisfy this element.  Although Plaintiff does not recount any specific request for sex, she alleges numerous requests that Plaintiff "go on a date" with Defendant (*id.*, ¶¶ 22, 58, 81, 85), including out-of-state weekend trips (Doc. 42, ¶¶ 36-38, 40, 51), as well as unwanted touching (*id.*, ¶ 45, 46) and other unwanted personal attention (*id.*, ¶¶ 46, 48, 49, 54, 55, 86, 88).  Defendant made multiple comments of a sexual nature.  (*Id.*, ¶¶ 28, 43, 82).  Plaintiff also alleges that she resisted Defendant's advances (*id.*, ¶ 63), and informed him that she was not comfortable being alone with him (*id.*, ¶¶ 61-62).

To satisfy the fourth element, Plaintiff must establish: (a) "a tangible employment action or detriment"; and (b) "a causal relationship between the tangible employment action and [her] alleged actions." *Sanford*, 327 F. App'x at 597 (*citing Howington v. Quality Rest. Concepts, LLC*, 298 F. App'x. 436, 442-43 (6th Cir. 2008)). A causal relationship requires that Plaintiff show she was "subjected to a tangible employment action 'because of' [Defendant's] sexual harassment." *Stewart v. Trans-Acc, Inc.*, No. 1:09-CV-607, 2011 WL 1560623, at *5 (S.D. Ohio Apr. 25, 2011).

Plaintiff has alleged that she was terminated because of her opposition to Defendant's advances. (Doc. 42, ¶ 10). She supports this claim with allegations that Defendant stated directly to her that she "owed him a date" in exchange for her being promoted to Crew Leader Assistant. (*Id.*, ¶ 22, 40). Furthermore, according to Plaintiff, when Defendant began scheduling fake work events in order to spend time with Plaintiff, against her wishes, and she communicated her opposition to Defendant, he informed her that she was required to comply with his order, since he was her supervisor. (*Id.*, ¶ 61-62). He told her he would consider her insubordinate if she did not continue to attend the faux meetings (*id.*, ¶ 65), and did in fact accuse her of insubordination the next day (*id.*, ¶ 66). One day later, without further explanation, Defendant demanded Plaintiff's Census Bureau badge and equipment, preventing her from working any further for the Bureau. (*Id.*, ¶ 67). Plaintiff reported the alleged harassment to Essex's supervisor, but was ultimately terminated only four days later. (*Id.*, ¶¶68, 70, 105-07).

Plaintiff has sufficiently pleaded a case for *quid pro quo* sexual harassment. Plaintiff's termination is a "tangible employment action." Furthermore, discipline can constitute an adverse employment action if it is a "materially adverse change in the terms and conditions of [plaintiff's] employment," *Hollins v. Atl. Co., Inc.*, 188 F.3d 652, 662 (6th Cir. 1999), or when a disciplinary

23

write-up "affect[s] an employee's opportunity for promotion and pay raises, and may place an employee on probation." *Rose v. Buckeye Telesystem, Inc.*, 181 F. Supp. 2d 772, 776 (N.D. Ohio 2001) (citation omitted).  In addition, Plaintiff has pleaded that her termination was "because of" her resistance to Essex's sexual harassment.  Defendant's comments that Plaintiff "owed him" a date, his threats that he would consider her insubordinate if she did not attend meetings, in which he and Plaintiff where the only participants, and his actual accusations of insubordination, following immediately after Plaintiff's resistance, are sufficient to state a claim under Title VII. *Compare Howington v. Quality Rest. Concepts, LLC*, 298 F. App'x 436, 442 (6th Cir. 2008) (finding evidence sufficient to infer causal connection where defendant "propositioned the plaintiff for sex every day that she worked with him," and "became increasingly aggressive with her as she continued to refuse his advances.").

### 2.  Hostile Work Environment

To establish her case for hostile work environment sexual harassment, Plaintiff must allege that:  "(1) she is a member of a protected class, (2) she was subjected to unwelcome sexual harassment, (3) the harassment was based on her sex, (4) the harassment created a hostile work environment, and that (5) the employer is vicariously liable. *Clark v. United Parcel Serv., Inc.*, 400 F.3d 341, 347 (6th Cir. 2005).  A "hostile work environment" is one in which the abusive conduct "had the effect of unreasonably interfering with her work performance and creating an objectively intimidating, hostile, or offensive work environment." *Grace v. USCAR*, 521 F.3d 655, 678 (6th Cir. 2008).  Plaintiff must show "that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal quotations omitted).

24

The harassment must be both objectively and subjectively "abusive," meaning both "that a reasonable person would find [it] hostile or abusive," and that the plaintiff "subjectively perceive the environment to be abusive." *Id.* Proof of a violation Title VII, however, does not require that the abuse reach the level of causing a nervous breakdown. *Id.* at 22. Although Title VII "bars conduct that would seriously affect a reasonable person's psychological well-being," a plaintiff can also succeed if "the environment would reasonably be perceived, and is perceived, as hostile or abusive." *Id.* at 22 (internal citation omitted).

In this case, Plaintiff has alleged that she is a member of a protected class and that she was subject to unwelcome harassment based on her sex (*see supra*, part V.D.1). Thus, the Court must decide whether Plaintiff has succeeded in alleging a hostile work environment that was "permeated with discriminatory intimidation, ridicule, and insult." *Harris*, 510 U.S. at 21. The Supreme Court "has provided a non-exhaustive list of factors to consider when deciding whether a hostile work environment exists including: 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Grace*, 521 F.3d at 678 (quoting *Harris*, 510 U.S. at 23). The work environment "as a whole must be considered rather than a focus on individual acts of alleged hostility." *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 463 (6th Cir. 2000).

Again, Plaintiff has succeeded at stating her claim. As alleged in the Second Amended Complaint, Plaintiff was the subject of repeated and unrelenting advances from Defendant Essex, in the form of direct verbal requests, sexual innuendo, and unwanted touching. The fact that Essex proceeded by implication, rather than in explicitly sexual language, is immaterial. *Williams v. Gen. Motors Corp.*, 187 F.3d 553, 565 (6th Cir. 1999) (the conduct underlying a

sexual harassment claim "need not be overtly sexual in nature.  Any unequal treatment of an

employee that would not occur but for the employee's gender may, if sufficiently severe or

pervasive under the Harris standard, constitute a hostile environment in violation of Title VII.").

Plaintiff has alleged "an ongoing pattern of unwanted conduct and attention," *Clark v. United*

*Parcel Serv., Inc.*, 400 F.3d 341, 352 (6th Cir. 2005), that she subjectively perceived as, and that

a reasonable person could find to be, hostile and abusive:  the conduct was frequent and intense

over the period of time alleged; it involved threatening conduct, such as uninvited after-hours

phone calls and physical stalking; and it interfered with Plaintiff's work through contrived

meetings and far-flung detours.  *Compare Garcia v. ANR Freight Sys., Inc.*, 942 F. Supp. 351,

356 (N.D. Ohio 1996) (finding that the workplace was not "permeated with discrimination"

when the alleged acts "occurred on three occasions during a five-day orientation period," and

were "random, isolated, and brief.").

### 3.  Retaliation

A claim for Title VII retaliation requires a plaintiff to show that:  (1) she engaged in a

protected activity under Title VII; (2) her protected activity was known to Defendant; (3)

Defendant took adverse employment actions against her; and (4) there was a causal connection

between the adverse employment action and the protected activity.  *Nicholson v. City of*

*Clarksville, Tenn.*, 530 F. App'x 434, 446 (6th Cir. 2013).

Defendants argue that Plaintiff cannot establish retaliation based on her *reporting* the

alleged sexual harassment, since Essex first demanded Plaintiff's badge, and only then did she

report the harassment to Essex's supervisor.  (Doc. 46 at 17-18) (citing Doc. 42, ¶¶ 66, 67).

Plaintiff retorts that her protected actions included both her resistance to Essex's advances, as

well as her reporting.  (Doc. 50 at 19).  Further, she notes that she was not officially terminated

until some days after she lodged her complaint, giving Defendants "plenty of time to conduct an investigation of Plaintiff's sexual harassment allegations."  (*Id.* at 20).

Opposing any practice that an employee reasonably believes to be a violation of Title VII is a protected action.  *Crawford v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*, 555 U.S. 271, 276 (2009).  The Court in *Crawford* explained that the term "oppose" means "to resist or antagonize . . .; to contend against; to confront; to resist; to withstand."  *Id.* (ellipsis in original) (quoting WEBSTER'S NEW INT'L DICTIONARY (2d ed. 1958)).  The only limitation on an employee's invocation of Title VII's protection is that "the manner of [her] opposition must be reasonable."  *Niswander v. Cincinnati Ins. Co.*, 529 F.3d 714, 721 (6th Cir. 2008).  For example, refusing to obey an order the employee thinks is unlawful could constitute resistance or opposition under Title VII.  *Id.*  In this case, therefore, Plaintiff has alleged that she engaged in protected activity (both by resisting Defendant Essex, and reporting the conduct to his supervisor), that Defendants knew of her activity, and that she suffered an adverse employment action (both by being disciplined, *see supra*, part. V.D.1, and in her termination).

With regard to causation, Title VII retaliation claims "must be proved according to traditional principles of but-for causation . . . This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer."  *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533 (2013).  "One way by which a plaintiff can demonstrate a causal connection is to show close temporal proximity between the adverse employment actions and the protected activity."  *Taylor v. Geithner*, 703 F.3d 328, 339 (6th Cir. 2013) (citation omitted).

Plaintiff has sufficiently alleged causation.  The adverse action taken against her, both in the form of being written up for insubordination, and termination, occurred only days after the

alleged conduct, and indeed is precisely the threat the Essex is alleged to have made to Plaintiff when she disputed his orders.  (*See* Doc. 42, ¶ 65).  Furthermore, the fact that Defendants did nothing to investigate Plaintiff's claims after she reported them, if true, supports an inference that she was ultimately terminated a few days later "because of" her opposition.

Accordingly, the United States' Motion to Dismiss Plaintiff's claims under Title VII is **DENIED**.

## VI. CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss (Doc. 46) is **GRANTED IN PART AND DENIED IN PART**.  The Court hereby **ORDERS** that the United States shall be substituted for Defendant Essex with regard to her allegations of intentional infliction of emotional distress, except with regard to paragraphs 81, 86, and 88 of her Second Amended Complaint; the Court further **ORDERS** that that claim is thus converted into one under the FTCA.  Because Plaintiff's FTCA claim is preempted by Title VII, her FTCA claims are **DISMISSED**.  Because Plaintiff has failed to state a claim under Ohio law for IIED against Essex based on his conduct outside the scope of his employment, that claim is also **DISMISSED**.  Plaintiff's claims under Title VII are sufficient, and the United States' Motion to Dismiss with respect to these claims is hereby **DENIED**.

Additionally, Plaintiff's Motion to Strike (Doc. 49) is **DENIED**, and Plaintiff's Motion to Disqualify (Doc. 57) is **DENIED**.

**IT IS SO ORDERED.**


       **___ s/ Algenon L. Marbley_____**
       **ALGENON L. MARBLEY**
       **UNITED STATES DISTRICT JUDGE**

**DATED:  March 17, 2014**